UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/2023

------------------------------------------------------------ X
KELLYANN A. MCKENZIE,                    :
                                          :
                          Plaintiff,      :
                                          :                    1:22-cv-9554-GHW
             -against-                    :
                                          :                    MEMORANDUM OPINION
BIG APPLE TRAINING INC.,                  :                        AND ORDER
                                          :
                          Defendant.      :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Kellyann A. McKenzie is an American woman of Jamaican descent.  She is also a

practicing Seventh Day Adventist.  She was hired to teach for Defendant Big Apple Training Inc. by

its director, Jackie Bowen—a Jamaican woman who is also a Seventh Day Adventist.  After

Defendant received complaints from students about her work in her second semester of classes,

Defendant had another teacher substitute in some of her classes and did not offer Ms. McKenzie

the opportunity to teach again.  Ms. McKenzie believes that she was terminated as a result of a plot,

because Jamaicans "have a vendetta against Americans."  She also asserts that she was "indirectly"

asked to compromise her religious beliefs when asked to engage in conduct that she believed to be

dishonest—namely, to permit a student to take an exam that would have allowed him to pass her

class.  Ms. McKenzie also asserts that she believes that Defendant recorded her while teaching,

violating what she describes as her federal right to privacy, and allowing it to steal her allegedly

valuable teaching practices.  Because Ms. McKenzie has failed to plead that Defendant was

motivated by discriminatory animus, as required to support her claims under Title VII, and her other

federal claims lack merit, Defendant's motion to dismiss her federal claims is GRANTED.

## I. BACKGROUND

### A. Facts[1]

Plaintiff Kellyann McKenzie is an American woman of Jamaican descent.[2]  She is a practicing member of the Seventh Day Adventist faith.  Ms. McKenzie was interviewed for a position with Defendant Big Apple Training Inc. by its director, Jackie Bowen.  Opp. at 5.  During the interview, Ms. McKenzie told Ms. Bowen that "her parents were Jamaican and that she was born there."  *Id.*  Ms. Bowen is Jamaican.  Complaint ¶ 17.  During the interview, Plaintiff and Ms. Bowen also discussed their shared faith as Seventh Day Adventists.  "Plaintiff . . . asked Bowen if she was an Adventist and asked about churches she visited in the Bronx.  Plaintiff told her that she too was an Adventist and was raised as an Adventist."  Opp. at 5.  Ms. McKenzie was hired for the job.

Ms. McKenzie first began working for Defendant in July of 2021.  Complaint ¶ 3.  She replaced a prior instructor, Mr. Marrero.  *Id.*  Plaintiff asserts that she was "saddened and concerned as to why such a stellar instructor was being terminated."  *Id.*  After observing his teaching, Ms. McKenzie concluded that the students "were envious and jealous" and that they were "complaining to staff about instructors['] teaching style" to have them terminated.  *Id.*  Nonetheless, Ms. McKenzie taught her first course in July/August 2021, and, she reports, "did extremely well."  *Id.*  She was told by a "higher up in school" that the school's passing rate had increased.  *Id.*  Defendant paid Plaintiff during the break between that course and classes the following semester.  *Id.*

While she herself, "did extremely well" in her teaching, Ms. McKenzie encountered conduct

---

[1] The facts in this section are drawn from Plaintiff's amended complaint (the "Complaint"), Dkt. No. 5, and her opposition to Defendant's motion to dismiss, Dkt. No. 23 ("Opp.").  For this motion, the Court must accept as true the facts alleged in the complaint.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Because Plaintiff is litigating this action *pro se*, the Court also considers factual allegations in her opposition.  *See, e.g., Braxton v. Nichols*, No. 08 Civ. 8568(PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] She is also a prolific litigant.  Including this case, she has filed six cases that have been presented in this district since October 2022:  7:22-cv-8720; 1:23-cv-4760; 1:23-cv-4887; 1:23-cv-5251; and 1:23-cv-5558.  She has filed another two cases in the Eastern District of New York, where she resides:  1:2023cv04557; 1:2023cv05240.

that she viewed as problematic during her first semester teaching at Defendant's program.  After Ms. McKenzie administered her first exam to students, Ms. Campbell, a relative of the program's director, Ms. Bowen, offered to help Ms. McKenzie grade her exams.  *Id.* ¶ 11.  Ms. McKenzie accepted the offer of help but believed that Ms. Campbell was grading the papers "incorrectly."  *Id.* "Ms. McKenzie inferred it could have potentially been a plot for her termination and immediately ceased help from Ms. Campbell."  *Id.*

And in August, 2021, Ms. McKenzie was, in her view, "*indirectly* asked to compromise religious beliefs."  *Id.* ¶ 10 (emphasis added).  Mr. Bowen, Ms. Bowen's son, called Plaintiff and asked her to let a failing student take an exam so that the student could pass her class.  *Id.*  Ms. McKenzie had "denied student the right to take the exam."  *Id.*  Ms. McKenzie was again "appalled" that she had been asked to give the student the opportunity to take the exam.  She "inferred that this could have potentially been a practice among instructors of Big Apple Training (passing course failing students . . . ) or completely passing failing students with money being a motive."  *Id.*  It was this request that forms the basis of Ms. McKenzie's claim for religious discrimination in this case. As a Seventh Day Adventist, the Bible is an "integral part of her religion" and therefore her faith asks her to tell the truth so as not to "give false testimony against your neighbor."  Complaint ¶ 9. Ms. McKenzie claims that the request to let her student take the exam pressured her to dishonor her religious beliefs.  Opp. at 2.

Notwithstanding those interactions, Ms. McKenzie was offered the opportunity to teach a morning and evening class the following semester (October/November 2021).  *Id.* ¶ 4.  She began to notice that Ms. Bowen was displeased with her work.  *Id.*  That semester, Ms. McKenzie had a problematic student in her evening class.  She complained to Ms. Campbell, who told her that there were "cameras in the classroom and that upper management could hear what was going on."  *Id.* Ms. McKenzie was again "appalled" by the presence of the cameras in her classroom "as she

brought her own innovative ideas, and secrets to her teaching style and felt that management *could have* stole[n] her ideas." *Id.* (emphasis added).  Ms. McKenzie "believes Defendant stole her ideas (worth millions) used them for her own benefit." *Id.* ¶ 8.  Among the allegedly creative ideas that Plaintiff claims Defendant stole is that "she had students come up to the board."  Opp. at 4.

Later that semester, Ms. Bowen took over some of Plaintiff's evening classes.  *Id.* ¶ 5. Students had complained about Plaintiff's teaching.  *Id.*  Ms. McKenzie asserts that no other students complained about her in her other classes and that she "couldn't understand why students were complaining without consulting her first . . . ."  *Id.*  Ms. McKenzie detected another plot: "Plaintiff believes Director Jackie Bowen and other staff members plotted together during this act in an attempt to have Plaintiff terminated (early November 2021)."  *Id.*

Ms. McKenzie asserts that she was terminated from her position.  After her second set of classes, Ms. McKenzie "called inquiring about future class schedules and this information was omitted from her . . . ."  Opp. at 4.  Ms. McKenzie asserts that she "was under the impression that she would still receive compensation following the break between the morning and evening class but did not receive any monies at all . . . ."  Complaint ¶ 7.  This caused her "intense shock and psych trauma.  (Dec/Jan 2021)."  *Id.*

Ms. McKenzie posits two reasons for her termination.  First, she asserts that she believes that she was terminated because of her "exceptional performance and abilities."  Complaint ¶ 6.  She alleges that "higher ups" noticed increased "clientele, retention of students, passing rate, etc."  *Id.* ¶ 6.  Due to Plaintiff's exceptional performance, she alleges, Big Apple wanted to hire a different employee with more experience to "maintain the overall growth of the business."  *Id.*  Ms. McKenzie understands that Defendant's decision to replace her with a more experienced employee was the result of her exceptional performance and resulting improvement in the business, which they could best maintain by hiring a different person.

4

The second reason for her termination, Ms. McKenzie asserts, is discrimination against her on the basis of her national origin and religion.  Ms. McKenzie and Ms. Bowen, who hired her, both have roots in Jamaica, and work in the United States.  But Ms. McKenzie, who identifies herself as American, believes that Ms. Bowen discriminated against her on the basis of her national origin.  Ms. McKenzie explains the basis for her view as follows:

> Plaintiff believes she was discriminated against because of her national origin (American)[.] Director is Jamaican and although Plaintiff is not Jamaican and of Jamaican descent, she is fully aware that Jamaican people do not like American people because of their opportunities for success.  Jamaican people are not afforded the same opportunities in Jamaica and have to struggle and fight more.  It is for this reason, they have a vendetta against Americans and want them to endure the same struggles and limit their opportunities.

Complaint ¶ 17.

Ms. McKenzie also asserts that she concluded that the motivating factor for her termination was her religious beliefs.  *Id.* ¶ 15.  As the basis for this claim, she points to the instance in which she was asked to give a student a make-up exam, but refused to do so because of her belief that doing so would be dishonest.  Ms. McKenzie asserts as a basis for her alleged religious discrimination claim that she "is a firm believer in honesty which was compromised as shown in this complaint."  *Id.*

## B. Procedural History

Ms. McKenzie filed a complaint with the New York State Division of Human Rights (the "NYSDHR") on April 6, 2022.  Dkt. No. 1 at ECF p. 12.  The NYSDHR investigated her charge.  On July 27, 2022 the NYSDHR issued a "Determination and Order" following the investigation (the "Determination").  *Id.*  The Determination stated, among other things, that Ms. McKenzie "has not provided any direct evidence of a discriminatory motive for the Respondent's actions, or evidence demonstrating that she was treated differently compared to others who did not share her protected characteristics."  *Id.* at ECF p. 16.  On October 4, 2022 the Equal Employment Opportunity Commission issued Ms. McKenzie a right to sue letter.  *Id.* at ECF p. 11.

Ms. McKenzie filed her initial complaint with this Court on November 10, 2022.  Dkt. No.

1.  The initial complaint attached both the Determination and the October 4, 2022 right to sue letter. On November 17, 2022, the Court issued an order in response to the complaint (the "November Order").  Dkt. No. 3.  In its November Order, the Court dismissed *sua sponte* Ms. McKenzie's claim under the Age Discrimination in Employment Act (the "ADEA") because she was not yet 40 years old.  *Id*. at 2.  The Court also dismissed her claims for discrimination on the basis of her national origin and religion.  With respect to her Title VII claims for discrimination on the basis of her national origin, the Court wrote the following:

> These vague allegations that Jamaicans "have a vendetta against Americans" are insufficient to give rise to a plausible inference that Director Bowen, who had hired Plaintiff a few months earlier, discontinued Plaintiff's employment based on her American national origin.  Because Plaintiff fails to plead facts showing that her national origin was a motivating factor in any adverse action, the complaint does not state a Title VII claim for national origin discrimination.

*Id*. at 4.

And the Court responded to Plaintiff's Title VII claims for religious discrimination as follows:

> Plaintiff's allegations that Defendant was aware of Plaintiff's religious identification as a Seventh Day Adventist, much less that her religion motivated Defendant's decision not to continue offering her courses to teach.  Plaintiff's complaint thus fails to state a claim that Defendant discriminated against her in employment based on her religion.

*Id*.

While the Court dismissed Plaintiff's federal claims, it granted her leave to amend the complaint.  *Id*. at 6.  In its order granting leave, the Court instructed Ms. McKenzie that her amended complaint would "completely replace, not supplement, the original complaint," and advised her as a result, that she should include any fact or claims that she wanted to include from the original complaint in the amended complaint.  *Id*. at 6.

Ms. McKenzie filed her amended complaint on January 14, 2023.  It is the operative complaint in this action.  The complaint did not restate her claim under the ADEA, but presented

again, among other causes of action, her prior claims for discrimination.  Because the Complaint did

not provide substantial factual detail to support her claims that had not been presented in the initial

complaint, the Court issued an order directing Plaintiff to show cause why the claims should not be

dismissed again for failure to state a claim.  Dkt. No. 11.  Ms. McKenzie filed a response to that

order on March 24, 2023.  Dkt. No. 13.

Ultimately, the Court held a conference in the matter.  During the conference, Defendant

proposed filing the motion to dismiss that is the subject of this opinion.  Dkt. No. 14.  Defendant

filed its motion to dismiss on April 28, 2023.  Dkt. No. 14 (motion); Dkt. No. 15 (memorandum in

support, or "Def's Mem."); Dkt. No. 16 (declaration in support).  Following some extensions, Ms.

McKenzie filed her opposition on June 28, 2023.  Dkt. No. 23.  The Opposition was prepared with

the assistance of volunteer counsel from the New York Legal Assistance Group ("NYLAG").  *Id.* at

1 ("Portions of this document were prepared with the assistance of the NYLAG Clinic for Pro Se

Litigants.").  Following the submission of Defendant's reply on July 8, 2023, the motion is now fully

briefed.  Dkt. No. 24 ("Reply").

## II. LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a claim that does not

meet this pleading standard for "failure to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in

the complaint and draws all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  But "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" are inadequate.  *Iqbal*, 556

U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "[t]he tenet that a court

must accept" as true a complaint's factual allegations does not apply "to legal conclusions."  *Iqbal*,

556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)). A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

Because she is proceeding *pro se,* the Court must liberally construe Plaintiff's allegations and "interpret[ ] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis in original); *see also Erickson v. Pardus,*

551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed. . . . "). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements. *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).[3]

## III. DISCUSSION

The Court broadly construes Ms. McKenzie's complaint to assert the following causes of action:  (1) religious discrimination under Title VII; (2) national origin discrimination under Title VII;  (3) retaliation under Title VII; (4) copyright infringement; (5) violation of privacy under the Fourteenth Amendment; and (6) discrimination under the New York State Human Rights Law and the New York City Human Rights Law.  The Court takes up an analysis of each of those claims, and any other potential state law claims in turn below.

### A.  Title VII Claims

#### 1.  Exhaustion of Administrative Remedies

The Court cannot conclude that Ms. McKenzie failed to exhaust her administrative remedies with respect to her claims for religious discrimination in violation of Title VII on this record because no party provided the Court a copy of Ms. McKenzie's charge.  "As a precondition to filing a Title VII claim in Federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also* 42 U.S.C. § 2000e–5(e)-(f).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[ ] and, as such, a precondition to bringing such claims in federal court."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001) (per

---

[3]  Sometimes, the assistance of counsel in preparing a filing for a *pro se* litigant justifies a decision by the Court not to afford it the special solicitude generally afforded to *pro se* litigants.  *See, e.g., Askins v. Metro. Transit Auth.*, No. 1:19-CV-4927-GHW, 2020 WL 1082423, at *4 (S.D.N.Y. Mar. 5, 2020).  While NYLAG assisted Ms. McKenzie with the preparation of parts of her Opposition, the Court is evaluating the submission with special solicitude, because the Court cannot determine which portions of the Opposition were drafted with the assistance of counsel.

curiam) (quoting *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir. 2000)).  "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action*." Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).  That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985).

However, "claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency." *Littlejohn*, 795 F.3d at 322 (quoting *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the . . . investigation which can reasonably be expected to grow out of the charge that was made*." Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001).  In evaluating administrative exhaustion under this standard, the Court should consider whether "the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action." *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (*quoting Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)).  "The central question is whether the complaint . . . gave th[e] agency 'adequate notice to investigate discrimination on both bases.'" *Williams,* 458 F.3d at 70 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).  The Second Circuit has characterized this exception to the exhaustion requirement as "essentially an allowance of loose pleading" that is "based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Id.*

"[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d

Cir. 2018); *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5 (E.D.N.Y. 2013) ("The failure to exhaust administrative remedies is an affirmative defense, for which defendant bears the burden of proof."). While affirmative defenses are most typically asserted in an answer, they "may be raised on a motion to dismiss . . . where the complaint itself establishes the circumstances required as a predicate to a finding that the affirmative defense applies." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F.Supp.2d 253, 258 (S.D.N.Y. 2007) (alteration omitted) (*quoting McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)).

Defendant argues that Court should dismiss Plaintiff's claims for religious discrimination under Title VII "because these claims were not raised in Plaintiff's initial New York State Division of Human Rights/EEOC complaint." Def's Mem. at 8. It bases that argument on the assertion that "Plaintiff did not allege religious discrimination and the NYSDHR complaint contained no facts concerning or related to Plaintiff's religion or her religious discrimination claims as set forth in the Amended Complaint." *Id.* at 9. In support of this assertion, Defendant points to a declaration that attaches the Determination, but does not provide the Court with a copy of Ms. McKenzie's actual charge. *Id.*

Simply put, without the charge itself the Court cannot evaluate whether Plaintiff raised her religious discrimination claims in her charge, or whether the factual allegations contained in it can be fairly read to encompass the religious discrimination claims brought in this action. To be sure, the Determination contains a brief description of Plaintiff's complaint, but it does not purport to be comprehensive.

Defendant's claim that Plaintiff's religious discrimination claims have not been exhausted may eventually prove to be sound. Indeed, Plaintiff's Opposition could be construed to contain a concession that she failed to do so. Opp. at 5 ("Although the Court may lack subject matter jurisdiction over Plaintiff's religious and retaliation claims as they were not raised in the Plaintiff's

initial EEOC Complaint, the fact is that these exceedingly harmful events did occur . . . .").  But exhaustion of administrative remedies is an affirmative defense:  Defendant cannot expect the Court to conclude that Plaintiff failed to exhaust her remedies without providing the Court the opportunity to review the charge and a basis upon which to conclude that the charge may properly be considered in the context of the motion to dismiss when it was not attached to the complaint itself.[4] Defendant's failure to provide the Court a copy of the charge itself makes it impossible for the Court to evaluate whether Plaintiff exhausted her administrative remedies.

### 2.  Plaintiff's Title VII Claims Regarding Discrimination on the Basis of Her National Origin Are Inadequately Pleaded

Ms. McKenzie's Title VII claim of discrimination on the basis of her national origin are inadequately pleaded.  "To state a claim for employment discrimination pursuant to Title VII absent direct evidence of discrimination, a plaintiff must allege facts sufficient to plausibly support the inference that he (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) has 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  *Nguedi v. Fed. Rsrv. Bank of New York*, No. 1:16-CV-0636-GHW, 2017 WL 2557263, at *4 (S.D.N.Y. June 12, 2017) (quoting *Littlejohn* 795 F.3d at 311).  With respect to the fourth element, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn,* 795 F.3d at 311.

The Court assumes without holding that the complaint adequately pleads the first three of these elements.  However, Ms. McKenzie has failed to plead facts that would suggest a "minimal

---

[4] The form complaint used by Ms. McKenzie asks the litigant to attach a copy of the charge to the complaint.  She failed to do so, but because exhaustion of administrative remedies is an affirmative defense, not a pleading requirement, that failure does not make her complaint infirm.

inference of discriminatory motivation." *Id.*  The only basis for this claim is Ms. McKenzie's asserted belief that Jamaican people as a group have a vendetta against Americans as a group.  Apart from this generalized personal belief, she points to no facts to support the inference that Ms. Bowen, who had hired her just months before, acted on the basis of any discriminatory intent. Plaintiff's unsupported, generalized beliefs regarding all Jamaicans is not enough to support even a minimal inference of discriminatory animus.  *See, e.g.*, *Williams v. Wellness Med. Care, P.C.*, No. 11-CV-5566 KMK, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) ("Plaintiff relies on only his belief that Defendants were motivated by racial animus.  But without sufficient facts, even the most sincerely held beliefs do not comprise a sufficient basis for withstanding a 12(b)(6) attack.").

### 3.  Plaintiff's Title VII Claims Regarding Discrimination on the Basis of Her Religion Are Inadequately Pleaded

Plaintiff's claim of religious discrimination is also inadequately pleaded because she fails to present sufficient facts to support a minimal inference of discrimination.  The Court again assumes without holding that the complaint adequately pleads the other elements of a Title VII claim.  But the complaint again fails to assert facts that suggest even a minimal inference of discrimination on the basis of Plaintiff's religion.  This claim rests on Mr. Bowen's request to Ms. McKenzie to allow one of her students to take a test so that he could pass the class.  Ms. McKenzie alleges that by asking her to do something that she viewed as dishonest, Mr. Bowen "*indirectly* asked [her] to compromise religious beliefs."  Complaint ¶ 10 (emphasis added).  Plaintiff refused to do so.  This interaction by itself does not suggest discrimination on the basis of Plaintiff's religious beliefs. There is no allegation that any officer or agent of Defendant had a negative view of Plaintiff because of her religion, which Ms. Bowen, who hired her, shared.  The allegations in the complaint are simply not sufficient to show that Plaintiff's religion as a Seventh Day Adventist "was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

### 4.   **Plaintiff's Retaliation Claims under Title VII Are Inadequately Pleaded**

Plaintiff's claims for retaliation under Title VII are also inadequately pleaded.  "Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful 'for an employer to discriminate against any . . . employee[ ] . . . because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3(a).  "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  *Littlejohn*, 795 F.3d at 315–16 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

A plaintiff engages in protected activity when she "oppose[s]" discrimination.  *Littlejohn*, 795 F.3d at 316 (quotation omitted).  A plaintiff "need not [allege] that the behavior he opposed in fact violated" federal or state antidiscrimination statutes.  *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680–81 (2d Cir. 2016).  Instead, she must only allege "that [s]he possessed a good faith, reasonable belief that the" employer unlawfully discriminated.  *Id.* at 681 (citations omitted); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("[T]he plaintiff 'is required to have had a good faith, reasonable belief that she was opposing an [unlawful] employment practice.'" (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)).  "A plaintiff's belief that an employer's employment practice was unlawful is not reasonable simply because he or she complains of something that appears to be discrimination in some form."  *Kelly*, 716 F.3d at 15 (internal quotation marks omitted).

A plaintiff must also "ordinarily plead that the defendant had knowledge of the protected activity."  *Stern v. State Univ. of N.Y.*, No. 16-cv-5588 (NGG) (LB), 2018 WL 4863588, at *18

(E.D.N.Y. Sept. 30, 2018).  A plaintiff may meet this pleading standard by pleading facts that permit the Court to "reasonably infer that she engaged in protected activity known to the Defendants." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 57 n.8 (S.D.N.Y. 2019); *see also Belizaire v. Rav Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 355 (S.D.N.Y. 2014).  And even when a plaintiff does not allege that "the individual decision-maker" had "knowledge of protected activity," the plaintiff may survive a motion to dismiss by pleading that "the decision-maker was at least influenced or encouraged to take the adverse action by a superior with knowledge of the protected activity."  *Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.*, No. 11-cv-8934 (AJN), 2014 WL 896744, at *12 (S.D.N.Y. Mar. 3, 2014) (citing *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 147–48 (2d Cir. 2010); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

"[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (citations omitted); *see also Venezia v. Luxoticca Retail N. Am. Inc.*, No. 13-cv-4467 (RJS), 2015 WL 5692146, at *12 (S.D.N.Y. Sept. 28, 2015).  "The employee's complaint must be sufficiently pointed to be reasonably understood as a complaint [about] discrimination."  *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020) (quoting *Goonewardena v. N. Shore Long Island Jewish Health Sys.,* No. 11-cv-2456 (MKB), 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013)).  In other words, "a plaintiff 'must allege that her employer was on notice that her complaints were about statutorily prohibited discrimination, not just general unsatisfactory or unfair conduct.'"  *Id.* (quoting *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015)) (brackets omitted).

"Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully

discriminatory." *Kelly*, 716 F.3d at 17 (citations omitted); *see also Galdieri–Ambrosini v. Nat'l Realty and Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Thus, "[m]ere complaints of unfair treatment are not protected speech in the employment retaliation context," and it is the speaker's responsibility "to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Benzinger v. Lukoil Pan Ams.*, LLC, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (quotation and ellipsis omitted).

First, Plaintiff's interaction with Mr. Bowen after which she refused to allow a student to take an exam was not a protected activity. As pleaded, Plaintiff was not complaining of treatment due to her membership in a protected class. She responded to a request that she viewed as dishonest.

Second, the only protected activity in which Plaintiff engaged did not cause an adverse employment action. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (*quoting Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). According to the facts presented by Ms. McKenzie, the first—and only—time she engaged in a protected activity was when she filed the complaint with the NYSDHR on April 6, 2022. She does not allege any adverse action following that date. Because Plaintiff has not pleaded that any adverse action was caused by a protected activity, her retaliation claim is inadequately pleaded.

**B. Copyright Claim**

The complaint does not state a claim for copyright infringement. Absent exceptions not relevant here, "[b]efore pursuing an infringement claim in court," a copyright claimant "must

16

comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citing 17 U.S.C. § 411(a)); *see also id.* ("[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."). In accordance with that requirement, a "properly plead[ed] copyright infringement claim must allege," among other things, "which specific original works are the subject of the copyright claim" and "that the [purportedly infringed] copyrights have been registered in accordance with the [copyright] statute." *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16-cv-6110, 2017 WL 2829517, at *2 (S.D.N.Y. June 29, 2018) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)).

Because Ms. McKenzie has not pleaded ownership of a valid copyright, her complaint does not adequately plead a claim for copyright infringement. Ms. McKenzie claims that her ideas may have been stolen because she was recorded during class without her knowledge. Among the innovative teaching strategies that she alleges may have been stolen included asking her students to come to the board during class. She states that these "innovative ideas and secrets to her teaching style are worth millions." Opp. at 6. She believes that Ms. Bowen intends to use her teaching methods with other instructors and other classes, and that Defendant is therefore liable for copyright infringement.

There are many issues with Ms. McKenzie's claim for copyright infringement. But as a threshold matter, Ms. McKenzie admits that she does not hold a registered copyright for any of her ideas. She explains that "the practice is not common among teachers." *Id.* at 2. Because she has not satisfied that prerequisite, the complaint fails to state a claim for copyright infringement. *See* 17 U.S.C. § 411(a) ("no civil action infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made"). Accordingly, the Court must dismiss the copyright claim in its entirety.

### C.  Purported Fourteenth Amendment Claim

Ms. McKenzie contends that Defendant violated her "federally protected right to privacy" when they recorded her classes without her knowledge.  Complaint ¶ 18.  Ms. McKenzie points to Section 1 of the Fourteenth Amendment of the United States Constitution as the source of her asserted federal legal right to privacy.  There are substantial issues with the substantive basis for her claim.  But the Court need not engage with them here because Defendant is not alleged to be a government actor.  *See United States v. Morrison*, 529 U.S. 598, 621 (2000) ("[T]he principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.  That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.") (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (internal quotation marks omitted)); *see also Jourdain v. Serv. Emps. Int'l Union Loc. 1199,* No. 09 CIV. 1942 (AKH), 2010 WL 3069965, at *6 (S.D.N.Y. July 28, 2010).  Therefore, the Court dismisses Plaintiff's claims that are purportedly asserted under the Fourteenth Amendment.

### D.  Supplemental Jurisdiction

Having dismissed all of Ms. McKenzie's federal claims, the Court declines to accept supplemental jurisdiction over her state law claims.[5]  Ms. McKenzie brings state law claims for employment discrimination in violation of the NYSHRL and the NYCHRL, but the following analysis applies equally to any other state or local claims that her complaint might be construed to raise.  When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'"  *F5 Capital v. Pappas*, 856 F.3d 61, 77

---

[5] The Court lacks diversity jurisdiction because Ms. McKenzie pleads that she resides in New York and that Defendant is also domiciled in this state.  Complaint at 2.

(2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725

(1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution,

the Laws of the United States, and Treaties made, or which shall be made, under their Authority,'

and the relationship between that claim and the state claim permits the conclusion that the entire

action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2)).

Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of

operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)

(quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature

discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims

satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to

decline supplemental jurisdiction is available *only if* founded upon an enumerated category of

subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier,

Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise

supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially
> predominates over the claim or claims over which the district court has original
> jurisdiction, (3) the district court has dismissed all claims over which it has original
> jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons
> for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over

which it had original jurisdiction. Thus, the Court may exercise its discretion to decline

supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court

should not decline to exercise supplemental jurisdiction unless it also determines that doing so

would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity."

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted).  Both the Second

Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state

claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.

1998) (quoting *Gibbs*, 383 U.S. at 726).  "Although this is not a mandatory rule, the Supreme Court

has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-

law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First*

*Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("'[I]f the federal claims are

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should

be dismissed as well.'" (quotation omitted)).  This is the usual case:  The Court has evaluated the

values set forth in *Gibbs* in the context of this case and has concluded that they support the Court's

decision to decline supplemental jurisdiction.

## IV. LEAVE TO AMEND

"It is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave [to amend] when justice so requires.").  It is true that leave to amend

may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the

opposing party."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation

omitted).  The Court has dismissed Plaintiff's Title VII discrimination claims once before.

Nonetheless, given Defendant's *pro se* status, and the fact that this is the Court's first ruling with

respect to her copyright and purported Fourteenth Amendment claims, the Court will grant her

leave to amend the complaint once again.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Within twenty-one days, Plaintiff may file a second amended complaint to cure the deficiencies articulated in this opinion.  If no amended complaint is filed within that time frame, the Court will enter a final judgment of dismissal and direct the Clerk of Court to close this case.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 15.

SO ORDERED.

Dated:  July 31, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge

21