```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/23/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
KELLYANN A. MCKENZIE,                                        :
                                                             :
                                        Plaintiff,           :
                                                             :
                  -against-                                  :            1:22-cv-9554-GHW
                                                             :
BIG APPLE TRAINING INC.,                                     :
                                                             :          MEMORANDUM OPINION &
                                        Defendant.           :                 ORDER
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

    Plaintiff Kellyann A. McKenzie taught at Big Apple Training Inc. ("Big Apple") for about

seven months before she was terminated.  Shortly afterwards, she filed a complaint with the New

York State Department of Human Rights (the "NYSDHR") indicating that she had been terminated

because of her age and national origin.  The NYSDHR investigated her claims and concluded that

they lacked merit.  Then Ms. McKenzie filed this suit.  In it she claimed that he had been

discriminated against on the basis of her age and national origin.  She added that, in her view, a

request by Big Apple for her to pass a failing student discriminated against her on the basis of her

religion.  In two prior opinions, the Court dismissed Ms. McKenzie's claims because she had not

pleaded sufficient facts to raise a minimal inference of discrimination, but gave her leave to amend

her complaint.

    In the third iteration of the complaint, which is at issue here, Ms. McKenzie reasserts her

prior claims of discrimination on the basis of her national origin and religion.  And she adds, for the

first time, that she "could" have been subjected to discrimination on the basis of her gender and her

mental illness as well.  As with Ms. McKenzie's prior complaints, the second amended complaint

relies heavily on Ms. McKenzie's speculative "inferences" and fails to plead adequate facts to raise

even a minimal inference of discrimination.  And because Ms. McKenzie's complaint with the

NYSDHR did not encompass claims for discrimination on the basis of her religion, gender, or disability, Ms. McKenzie's federal claims on those grounds must also be dismissed for failure to exhaust administrative remedies.  As a result, Defendant's motion to dismiss is GRANTED.

## I.   BACKGROUND

### A.   Facts[1]

Ms. McKenzie is an American woman of Jamaican descent and a Seventh Day Adventist. Dkt. No. 37 (the "Opp'n"), at 10.  She has bipolar II disorder.  Dkt. No. 26 (the "SAC") ¶ 16.  On July 12, 2021, Ms. McKenzie began working at Big Apple, where she taught "phlebotomy/EKG class[es]."  *Id.* ¶¶ 4, 5.  She disclosed her religion to the Director of Big Apple, Jackie Bowen, who in turn disclosed that she was also a Jamaican Seventh Day Adventist.  Opp'n at 10.  Ms. McKenzie's colleague, a secretary named Ms. Campbell, is of Jamaican descent as well.  SAC ¶ 7.  Ms. McKenzie alleges that Ms. Campbell, at Director Bowen's direction, offered her assistance in grading exams for Ms. McKenzie's students.[2]  *Id.* ¶¶ 5, 8–9.  But when Ms. Campbell graded the exams from Ms. McKenzie's class, she did so incorrectly.  *Id.* ¶ 5.

Ms. McKenzie alleges that Director Bowen had instructed Ms. Campbell to grade Ms. McKenzie's students' exams incorrectly in order "to show that Plaintiff was incompetent and not able to properly manage her position."  *Id.* ¶ 9.  Ms. McKenzie "inferred that this act was a form of national origin discrimination to attempt to have [her] terminated."  *Id.* ¶ 6; *see also* Opp'n at 5 (stating that the exams were "incorrectly grade[d] . . . to put [P]laintiff's job at stake").  She alleges that this was part of a pattern by Director Bowen of "terminat[ing] instructors frequently so the[y]

---

[1] The facts are drawn from Plaintiff's Second Amended Complaint (the "SAC"), Dkt. No. 26, and Plaintiff's opposition to Defendant's motion to dismiss, Dkt. No. 37 (the "Opp'n").  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion").  The Court must accept as true the facts alleged in the complaint.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147 152 (2d Cir. 2002), but this is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff alleges that Ms. Campbell is either related to or friends with Director Bowen "as they are both of Jamaican descent."  *Id.* ¶ 7.

weren't able to be promoted and take [Director Bowen's] place"—a position that Director Bowen felt "entitle[d] to." SAC ¶¶ 8, 9. Ms. McKenzie alleges that Director Bowen "yell[ed] to intimidate staff members"—saying, for example, "you're not going to talk to me like that" to one staff member, who "disappeared shortly after" the incident. *Id.* ¶ 10. In addition, Ms. McKenzie alleges that Ms. Campbell made her "nervous and uncomfortable . . . [and] used excess authority towards all the employees." *Id.* ¶ 7.

Ms. McKenzie alleges that another instructor, "Ms. Marrero[, who] was Dominican[,] was terminated shortly after her arrival." *Id.* ¶ 18. Ms. McKenzie also contends that "sex (being a female) could . . . be a form of discrimination at Big Apple Training as they have a high turnover[,] and [Ms. McKenzie] was told [that] a female instructor before Ms. Marrero was also terminated." *Id.*

Ms. McKenzie alleges that the fact that Director Bowen's son, Mr. Bowen, also works there "doesn't allow fair treatment to all that may want to apply for a management position . . . [and Big Apple] is so tight knit that no one can go against them if they believe they are being treated unfairly." *Id.* ¶ 11.

Ms. McKenzie was offended by an instance in which she was asked to pass a failing student. She alleges that it was "a usual practice of Big Apple . . . to pass a failing student with one exam" if the student "attended but failed throughout the course." *Id.* ¶ 13. In late August 2021, Mr. Bowen asked Ms. McKenzie if a failing student could take an exam in order to pass Ms. McKenzie's class. *Id.* ¶¶ 12, 13.[3] By this point, "the grades were already submitted," and the student had failed. *See id.* ¶ 12. Nonetheless, Mr. Bowen called Ms. McKenzie "and stated [that] the student arrived and lied and told [Mr. Bowen] that [Ms. McKenzie] said all [the student] needed to do was take an exam to

---

[3] Ms. McKenzie alleges that she was "under the impression that [Director] Bowen directed her son to call and ask [her] to allow the student to take an exam to pass the class. If Director [Bowen] did not direct her son to call [Ms. McKenzie], he called [on] his own." *Id.* ¶ 13.

pass the class." *Id.* ¶ 12.  Ms. McKenzie "was not willing to compromise her religious beliefs and pass failing students."  Opp'n at 9.[4]

Ms. McKenzie had caught this particular student cheating before, and the cheating had been captured by in-classroom cameras. *Id.* ¶¶ 12, 15.  Ms. McKenzie alleges that because Mr. Bowen had access to the students' records, Mr. Bowen was aware that this student was failing the class.  *Id.*  Ms. McKenzie was "appalled that [Mr. Bowen] would even call and ask Plaintiff" if the student could pass by taking the test after grades were already in.  *Id.*  Ms. McKenzie was also "appalled" because the student, after being caught cheating on camera, "should have been expelled from the school or reprimanded but was able to continue attending the course." *Id.* ¶ 15.

Director Bowen uses the in-classroom cameras in part to monitor teachers' classrooms at Big Apple.  SAC ¶ 12.  After reviewing footage of Ms. McKenzie's classroom one day, Director Bowen allegedly concluded that Ms. McKenzie had performed poorly on the job. *Id.* ¶ 16.  The following day, Director Bowen pulled Ms. McKenzie from her class.  *Id.*  Ms. McKenzie alleges that "this action sent [her] into shock" and overwhelmed her, causing her to fear termination.  *Id.*  In addition, being pulled from her class "aggravated Plaintiff's bipolar 2 condition and partially caused her miscarriage due to stress."  *Id.*  This miscarriage took place in November of 2021.  *Id.*

In another instance, Ms. McKenzie met with Director Bowen and Ms. Campbell, who told Plaintiff that she "wouldn't believe the [negative comments] that were being said behind her back." *Id.* ¶ 17.  Ms. McKenzie "inferred [that] the comments could have been made due to something pertaining to her disability."  *Id.*; *see also* Opp'n at 9 ("Negative comments were being made against [P]laintiff to secretary Ms. Campbell which caused [P]laintiff's termination and were more than[] [*sic*] likely due to [P]laintiff's disability.").  She further alleges that Director Bowen "made a mental note

---

[4] Accordingly, Ms. McKenzie states that "there was an inference of religious discrimination when Defendant's son Mr. Bowen asked Plaintiff if a failing student could take an exam to pass the class."  Opp'n at 6.

of the negative comments and decided to look for a new hire" as a result. SAC ¶ 17. Ms. McKenzie

adds that she had "no qualms with students and more that eighty percent of her students were

successful and passed her class." Opp'n at 3. Ms. McKenzie alleged that ultimately, the "negative

comments made by students were part of the reason [Plaintiff] was terminated." *Id.*

Due to "an increase in clientele" at Big Apple, Ms. McKenzie eventually began teaching two

classes. SAC ¶ 20. She "noticed students on her roster disappearing (being transferred to the

Saturday class) to be with another instructor (Mr. Mora)." *Id.* Ms. McKenzie "inferred that Mr.

Mora received a raise off of Plaintiff's referrals," and she "infer[red that] students were added to his

class to increase his pay." *Id.*

Ultimately, "preparations were made for [Ms. McKenzie] to be terminated;" and "Defendant

found someone to replace her." *Id.* ¶ 21. Although, according to the complaint, "Defendant alleges

that Plaintiff was never fired/laid off," Ms. McKenzie alleges that she was not "informed of a date

to return to work after her last class in February of 2022," and she was terminated. *Id.* ¶ 19; Opp'n

at 3. Ms. McKenzie alleges that she "was never forewarned of a termination, written up, or

reprimanded prior to being terminated." SAC ¶ 17. She began to receive unemployment letters at

her home a month before a new instructor started. *Id.* ¶ 19.

Ms. McKenzie contends that "Defendant hired a new employee to replace [P]laintiff because

[P]laintiff was not willing to compromise her religious beliefs and pass failing students." Opp'n at 9.

Ms. McKenzie also alleges that, after being replaced, she "was lied to" because she was belatedly

"told that instructors were on a rotation and . . . not inform[ed] of when the next class would

commence" to replace the one she had previously led. Opp'n at 9; SAC ¶ 21.

### B. Procedural History

On April 6, 2022, Ms. McKenzie filed a complaint with the New York State Division of

Human Rights. *See* Dkt. No. 31 (the "Schragin Declaration"), Ex. A (the "NYSDHR Complaint" or

the "Administrative Complaint").[5]  The NYSDHR Complaint states that Ms. McKenzie experienced

discrimination "because of age, national origin." *Id.* at 2; *see also id.* at 4 (listing as the "[b]asis of

alleged discrimination in employment" only "Age" and "National Origin").  The NYSDHR

Complaint "charge[s]" Big Apple "with an unlawful discriminatory practice relating to employment

because of age, national origin, in violation of the New York State Human Rights Law" and Title

VII of the Civil Rights Act of 1964, as well as the Age Discrimination in Employment Act.  *Id.* at 2.

Under "acts of alleged discrimination," Ms. McKenzie wrote that Big Apple "[f]ired [her]/laid [her]

off," and "[h]arassed or intimidated [her] on any basis indicated here."  *Id.* at 4.  Under "[b]asis of

alleged discrimination in employment," she wrote "[a]ge" and "[n]ational origin."  *Id.*  In listing the

name of the individuals who discriminated against her, Ms. McKenzie wrote "Jackie Bowen[,]

Director" and "Ms. Campbell[,] Director[']s Assistant."  *Id.*

        The NYSDHR issued a Determination and Order on July 27, 2022.  *See* Schragin Decl., Ex.

B.  This order stated, among other things, that "[t]he investigation did not reveal sufficient evidence

to establish an inference of discrimination based on age or national origin."  *Id.* at 4.  The NYSDHR

therefore dismissed the complaint.  *Id.*  On October 4, 2022, the U.S. Equal Employment

Opportunity Commission ("EEOC") issued Ms. McKenzie a right to sue letter.  *See* Schragin Decl.,

Ex. C.

        Ms. McKenzie filed her initial complaint with the Court on November 10, 2022.  Dkt. No. 1.

On November 17, 2022, the Court issued an opinion in response to the complaint.  Dkt. No. 3 (the

"November Opinion").  The November Opinion dismissed Plaintiff's age discrimination claim and

---

[5] "In reviewing a Rule 12(b)(6) motion to dismiss, 'it is proper for this court to consider the plaintiff[']s relevant filings with the EEOC' and other documents related to the plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either 'incorporate[d] by reference' or are 'integral to' and 'solely relie[d]' upon by the complaint." *Littlejohn*, 795 F.3d at 305 (quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565–66, *aff'd*, 552 U.S. 389 (2008)).  The NYSDHR Complaint was incorporated by reference to the complaint here.  *See* SAC at 6 (indicating that Ms. McKenzie filed a charge of discrimination with the EEOC).  Accordingly, it is proper to consider.  *See Littlejohn*, 795 F.3d at 305.

concluded that she failed to state a claim for national origin discrimination or religious discrimination.  *See id.* at 2–4.  With respect to the Title VII claims, the Court concluded that Ms. McKenzie's "vague allegations" were "insufficient to give rise to a plausible inference that Director Bowen . . . discontinued Plaintiff's employment based on her American national origin."  *Id.* at 4. She therefore "fail[ed] to plead facts showing that her national origin was a motivating factor in any adverse action . . . ."  *Id.*  The Court concluded similarly with respect to her claim of religious discrimination:  Ms. McKenzie's allegations were "insufficient to show that Plaintiff's religion as a Seventh Day Adventist 'was a motivating factor in the employment decision'" to fire her.  *Id.* (citation omitted).  The Court then granted Plaintiff leave to amend the complaint.  *Id.* at 6.

Ms. McKenzie filed her first amended complaint on January 14, 2023.  Dkt. No. 5 (the "FAC").  On July 31, 2023, the Court issued a memorandum opinion and order.  Dkt. No. 25 (the "July Opinion").  The July Opinion granted Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's FAC for failure to state a claim, and the Court granted leave to amend to cure the deficiencies identified in the July Opinion.  *See id.*  Specifically, the Court again found that "Ms. McKenzie has failed to plead facts that would suggest a 'minimal inference of discriminatory motivation'" for her claims of both national origin discrimination and religious discrimination.  *Id.* at 12–13.[6]

Ms. McKenzie filed the second amended complaint on August 22, 2023.  Dkt. No. 26 (the "SAC").  The SAC is the operative complaint in this action.[7]  Because she is pro se, the Court

---

[6] In the July Opinion, the Court also found that Ms. McKenzie failed to state a claim for copyright infringement.  *See id.* at 16–17.  Her claim brought under the Fourteenth Amendment was also dismissed.  *Id.* at 18.

[7] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  When the plaintiff is pro se, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g.*, *Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff . . . appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint.  Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . .  Since pro se civil rights complaints should be read with generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)).

liberally construes Ms. McKenzie's allegations and "interprets [them] to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis in original).  The Court construes the SAC to allege that Defendant discriminated against Plaintiff on the basis of her religion, disability, sex, and/or national origin and created a hostile work environment.  On October 2, 2023, Defendant filed a motion to dismiss the SAC, Dkt. No. 30, with a supporting memorandum of law, Dkt. No. 32, and a supporting declaration, Dkt. No. 31.  On November 19, 2023, Ms. McKenzie responded.  *See* Opp'n. Defendant replied on January 9, 2024.  Dkt. No. 41.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

---

Here, the Court previously expressly advised Ms. McKenzie that an amended complaint would "completely replace, not supplement" the earlier-filed complaint.  *See* November Opinion at 6 (instructing Ms. McKenzie that her FAC would "completely replace, not supplement, the original complaint," and advising her that, as a result, she should include any fact or claims that she wanted to include from the original complaint in the FAC); July Opinion at 6 (referencing the same).  Because Plaintiff has opted not to reassert her claims of retaliation, copyright infringement, and Fourteenth Amendment privacy violations, these claims have been abandoned.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

"A court's task" on a motion to dismiss "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the

plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)). A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

Because she is proceeding pro se, the Court must liberally construe Ms. McKenzie's allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman*, 470 F.3d at 474 (emphasis in original); *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed' . . . ." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements. *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III.    DISCUSSION

The Court liberally construes Ms. McKenzie's SAC to assert the following causes of action: (1) discrimination on the basis of disability under the Americans with Disabilities Act (the "ADA"); (2) discrimination on the basis of religion under Title VII; (3) discrimination on the basis of national origin under Title VII; (4) discrimination on the basis of sex under Title VII; (5) hostile work environment under Title VII; and (6) discrimination under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"). For the reasons that follow, each of these claims are dismissed.

### A.  Failure to Exhaust Administrative Remedies

Because Ms. McKenzie failed to exhaust her administrative remedies with respect to any claims for discrimination on the basis of religion, sex, or disability, these claims must be dismissed. "Ordinarily, a plaintiff seeking to bring a claim pursuant to the Americans with Disabilities Act ('ADA') [or] Title VII . . . must exhaust administrative remedies through the EEOC . . . ." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018); *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (Title VII); *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 124 (2d Cir. 2002) (ADA).[8]  "It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court. 'The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (other citations omitted).  "The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike." *Id.* (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir. 1999) (per curiam)).

That said, "claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency." *Littlejohn*, 795 F.3d at 322 (quoting *Williams*, 458 F.3d at 70).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the . . . investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d

---

[8] "[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018); *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5 (E.D.N.Y. 2013) ("The failure to exhaust administrative remedies is an affirmative defense, for which defendant bears the burden of proof."). While affirmative defenses are most typically asserted in an answer, they "may be raised on a motion to dismiss . . . where the complaint itself establishes the circumstances required as a predicate to a finding that the affirmative defense applies." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F.Supp.2d 253, 258 (S.D.N.Y. 2007) (alteration omitted) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)).

Cir. 2001).[9] "The central question is whether the complaint . . . gave th[e] agency 'adequate notice to investigate discrimination on both bases.'" *Williams*, 458 F.3d at 70 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). The Second Circuit has characterized this exception to the exhaustion requirement as "essentially an allowance of loose pleading" that is "based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [they are] suffering." *Id.*

Ms. McKenzie's NYSDHR Complaint fails to provide notice to the agency to investigate any claims based on her religion, sex, or disability.[10] *See generally* NYSDHR Complaint. First, the NYSDHR Complaint lacks any reference whatsoever to Ms. McKenzie's religion, sex, or disability. Ms. McKenzie's NYSDHR Complaint stated only that she had experienced discrimination "because of age, national origin." *Id.* at 2; *see also id.* at 4 (listing as the "[b]asis of alleged discrimination in employment" only "Age" and "National Origin"). Second, the NYSDHR Complaint is devoid any facts that "can be fairly read to encompass" claims of discrimination on the basis of religion, sex, or disability. *See Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008). Nor does it have any facts that can be fairly read to provide "notice that such claims might be raised." *See id.* As detailed below, the facts underlying Ms. McKenzie's claims for discrimination on the basis of religion, sex, or disability are not "'reasonably related' to the claim[s] filed with the agency" alleging age and national origin discrimination. *See Littlejohn*, 795 F.3d at 322 (quoting *Williams*, 458 F.3d at 70).[11] Accordingly, the

---

[9] "In evaluating administrative exhaustion under this standard, the Court should consider whether 'the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action.'" *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)).

[10] Again, a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). The NYSDHR Complaint was incorporated by reference to the complaint here. *See* SAC at 6.

[11] In short, Ms. McKenzie's claim for religious discrimination alleges that she was asked to condone dishonest activity by allowing a failing student to take an exam in order to pass her course. *See* SAC ¶¶ 12–13, 15; Opp'n at 12. Her sex-based discrimination claim generally alleges that some women instructors were terminated. *See* SAC ¶ 18. Her disability-

NYSDHR Complaint fails to provide "th[e] agency [with] 'adequate notice to investigate discrimination on [the] bases'" of religion and disability.  *See Williams*, 458 F.3d at 70 (quoting *Deravin*, 335 F.3d at 201).  She has therefore failed to exhaust her administrative remedies for her claims alleging discrimination on the basis of religion, sex, or disability.

### B.  Discrimination on the Basis of Disability

In addition, Ms. McKenzie fails to state a claim for disability discrimination under both the ADA and Title VII.  This is because her allegations fail to plausibly support even a minimal inference of discriminatory motivation above a speculative level.  The ADA establishes that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  "In accordance with this familiar standard, '[t]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that:  (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'"  *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

But of course, while many decisions resolving motions to dismiss (like this one) start with a description of *McDonnell Douglas*'s prima facie case, the "burden-shifting" framework established in

---

discrimination claim concerns negative comments made about her behind her back, which she believed related to her bipolar II disorder. *Id.* ¶¶ 16–17.  And in support of her national origin discrimination claim, Ms. McKenzie alleges that a colleague graded her students' exams incorrectly, at Director Bowen's direction.  *Id.* ¶¶ 5, 8–9.

*McDonnell Douglas* applies at summary judgment—not in the context of a motion to dismiss.  In the context of a motion to dismiss, the Court does not analyze the evidentiary support for a claim.  "[A] plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.  Rather, because 'a temporary 'presumption' of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 306, 311); *see also Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 9–10 (2d Cir. 2013) (summary order) ("To survive a motion to dismiss, a complaint alleging workplace discrimination . . . need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . .").[12] Instead, "[a]t the pleading stage, we consider only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez*, 520 F. App'x at 10 (quoting *Twombly*, 550 U.S. at 555)).

Plaintiff's allegations in the SAC are insufficient to plead disability-based discrimination because they fail to plead even a "minimal inference of discriminatory motivation."  *See Littlejohn*, 795 F.3d at 311.  First, Ms. McKenzie alleges that stressful circumstances at work "aggravated Plaintiff's bipolar 2 condition and partially caused her to suffer a miscarriage due to stress."  SAC ¶ 16.  Second, she states that she "inferred [that negative] comments could have been made due to something pertaining to her disability."  *Id.* ¶ 17; *see also* Opp'n at 9 ("Negative comments were being made against [P]laintiff to secretary Ms. Campbell which caused [P]laintiff's termination and were more than[] [*sic*] likely due to [P]laintiff's disability.").  These conclusory allegations fail to plead even a "minimal inference of discriminatory motivation."  *See Littlejohn*, 795 F.3d at 311.  Ms. McKenzie

---

[12] As support for this proposition, the *Gonzalez* Court cites *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[T]he appropriate standard for assessing the sufficiency of pleadings under Rule 8(a) is the source of some uncertainty in light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).").

has failed to adequately allege that Defendant's conduct was in any way motivated by her bipolar disorder or her pregnancy beyond pure speculation.  Her contention that she "*inferred*" that negative comments "*could have been made* due to something pertaining to her disability" is speculative, and it fails to establish a connection between her disability and any alleged adverse employment action on the part of the defendant.  *See* SAC ¶ 17 (emphasis added).  Because Ms. McKenzie's allegations are not "sufficient 'to raise a right to relief above the speculative level,'" *see Gonzales*, 520 F. App'x at 10 (quoting *Twombly*, 550 U.S. at 555), failing to supply even a minimal inference of discriminatory animus, *see Littlejohn*, 795 F.3d at 311, her claim for discrimination on the basis of disability is dismissed.

### C.  Discrimination on the Bases of Religion and National Origin

For the same reason, Ms. McKenzie's claims for discrimination on the basis of religion and national origin are dismissed:  she fails to plead that Defendant was motivated by discriminatory animus.  As the Second Circuit stated in *Littlejohn*:

> If the plaintiff can show (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation, such a showing will raise a temporary 'presumption' of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff.

795 F.3d at 307.  Again, "while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent." *Id.* at 311.  And "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to dismiss." *See Vega*, 801 F.3d at 84; *see also Gonzalez*, 520 F. App'x at 9–10.  Rather, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether

the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.

Ms. McKenzie has failed to plead facts that would suggest a "minimal inference of discriminatory motivation" in support of her claims for discrimination on the basis of religion and national origin.  *See id.*  The allegations underlying the claim for national origin discrimination include that a Big Apple employee, Ms. Campbell, at the direction of Director Bowen, incorrectly graded the exams submitted in Ms. McKenzie's class.  Ms. McKenzie argues that Ms. Campbell and Director Bowen did this as a "form of national origin discrimination to attempt to have [Ms. McKenzie] terminated."  SAC ¶ 6.[13]  And Ms. McKenzie alleges that Ms. Campbell made Plaintiff "nervous and uncomfortable" and "used excess authority towards all the employees."  *Id.* ¶ 7.  Last, Ms. McKenzie alleges that another teacher, Ms. Marrero, of Dominican descent, was also terminated.  *Id.* ¶ 18.  These allegations, taken together, fail to establish even "minimal support for the proposition that the employer was motivated by discriminatory intent."  *See Littlejohn*, 795 F.3d at 311; *cf. Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534 CBA MDG, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) ("Naked assertions of race discrimination . . . without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss." (internal quotation marks and citations omitted)).  As a result, Ms. McKenzie fails to state a claim for discrimination on the basis of national origin.

Ms. McKenzie's claim of religious discrimination is also inadequately pleaded because she fails to allege sufficient facts to support a minimal inference of discrimination.  This claim rests primarily on Mr. Bowen's request to Ms. McKenzie to allow one of her students, who had already

---

[13] *But see* Opp'n at 7 ("Plaintiff may have been appalled at Big Apple Training's handling of student grades and the manner in which they pass or fail students but none of this has anything to do with her or her claims of national origin, disability or religious discrimination.").

failed the class and was previously caught cheating, to take a test in order to pass the class. SAC ¶¶ 12–13, 15.[14] Plaintiff alleges that by asking her to do something that she viewed as dishonest, Mr. Bowen indirectly asked her to compromise her religious beliefs. *See* Opp'n at 12. Ms. McKenzie refused to do so. These allegations are insufficient to suggest even a minimal inference of discrimination on the basis of Ms. McKenzie's religious beliefs. As articulated in the Court's July Opinion:

> There is no allegation that any officer or agent of Defendant had a negative view of Plaintiff because of her religion, which Ms. Bowen, who hired her, shared. The allegations in the complaint are simply not sufficient to show that Plaintiff's religion as a Seventh Day Adventist "was a motivating factor in the employment decision."

July Opinion at 13 (quoting *Vega*, 801 F.3d at 86). This claim is therefore once again dismissed.

### D. Discrimination on the Basis of Sex

Nor does Ms. McKenzie adequately plead a claim for sex discrimination: again, she fails to plead facts that would suggest a "minimal inference" of sex-based discriminatory motivation. *See Littlejohn*, 795 F.3d at 311. "The sine qua non of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of sex*.'" *Patane v. Clark*, 508 F.3d 106, 189 (2d Cir. 2007) (quoting *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)). Ms. McKenzie contends that "sex (being a female) could also be a form of discrimination at Big Apple Training . . . ." SAC ¶ 18. But Ms. McKenzie has not pleaded sufficient facts to support an inference that any of the Defendant's alleged conduct was in any way related to her sex. Nor has Ms. McKenzie adequately pleaded facts tending to show that men received better treatment by Defendant than women did. The SAC alleges only that (1) "[s]ex (being a female) could . . . be a

---

[14] *See also* Opp'n at 12 ("With respect to [P]laintiff's religious discrimination claim, Plaintiff alleges the following: 'There was an inference of religious discrimination when . . . Mr. Bowen asked Plaintiff if a failing student could take an exam to pass the class.' . . . [D]efendant clearly wanted [Plaintiff] to compromise her religious beliefs of telling the truth and wanted to hire an employee that would do just that."); SAC ¶ 12 (arguing that these events constituted religious discrimination). *But see* Opp'n at 7 ("Plaintiff may have been appalled at Big Apple Training's handling of student grades and the manner in which they pass or fail students but none of this has anything to do with her or her claims of national origin, disability or religious discrimination.").

form of discrimination at Big Apple Training as they have a high turnover and [Ms. McKenzie] was

told [that] a female instructor . . . was terminated," SAC ¶ 18, and (2) Ms. McKenzie "inferred that

Mr. Mora received a raise off of Plaintiff's referrals," and she "infer[red that] students were added to

his class to increase his pay," *id.* ¶ 20.  These allegations are insufficient to plausibly plead a claim for

sex discrimination under Title VII.  *See, e.g.*, *Patane*, 508 F.3d at 112 (finding that Plaintiff failed to

state a claim for sex discrimination where "Plaintiff's Complaint does not allege that she was subject

to any specific gender-based adverse employment action by [any of the] defendants, nor does it set

forth any factual circumstances from which a gender-based motivation for such an action might be

inferred").  Accordingly, this claim is dismissed.[15]

### E.  Hostile Work Environment Under Title VII

Any claim of a hostile work environment fails because the complaint fails to plead both that

Defendant created an abusive working environment, and that any of Defendant's conduct occurred

because of one of Plaintiff's protected characteristics.  "To establish a hostile-work-environment

claim under Title VII, . . . a plaintiff must show that 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320–21

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Courts are . . . 'cautioned to consider

the totality of the circumstances, and to evaluate the quantity, frequency, and severity of the

incidents,' and must consider those factors 'cumulatively, so that we may obtain a realistic view of

---

[15] Last, Ms. McKenzie also asserts a theory of "discrimination" through nepotism.  She alleges that Big Apple is "so tight knit that no one can go against them if they believe they are being treated unfairly," SAC ¶ 11, and that Director Bowen's son working for Big Apple was "discriminatory because it does not allow fair treatment to all that may want to apply for a management position," Opp'n at 6.  Even when accepting all facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, *see Burch*, 551 F.3d at 124, this allegation fails to support a claim for discrimination on the basis of any protected characteristic, *see, e.g.*, *Hiralall v. Sentosacare, LLC*, No. 13 CIV. 4437 (GBD), 2016 WL 1126530, at *11 (S.D.N.Y. Mar. 18, 2016) ("Nepotism . . . is not evidence of actionable discrimination because showing a preference for one's family members, to the detriment of several other races or nationalities, does not amount to disparate treatment against a protected class."); *Rebele v. Potter*, 818 F. Supp. 2d 534, 538 (E.D.N.Y. 2011) ("Pernicious though [nepotism] is, it does not constitute a form of discrimination under Title VII.").

the work environment.'" *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74 (2d Cir. 2023) (quoting *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999)). "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321. And finally, a plaintiff must plausibly plead "that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

The facts in the SAC that might give rise to a claim for a hostile work environment include the following: (1) an employee of Big Apple Training Inc. "used excess authority towards all the employees," SAC ¶ 7; (2) Director Bowen "terminated instructors frequently so [that] the[y] weren't able to be promoted to take her place," *id.* ¶ 8; (3) "another tactic used [by Defendant] was yelling to intimidate staff members," citing an instance where a staff member said to Ms. Campbell, "[y]ou're not going to talk to me like that," and "disappeared shortly [there]after," *id.* ¶ 10;[16] and (4) Ms. McKenzie was told at a meeting with Director Bowen and Ms. Campbell that "she wouldn't believe the things that were said behind her back (negative comments)," *id.* ¶ 17. These allegations are not connected to Ms. McKenzie's religion, national origin, or disability in any way (or any other protected characteristic),[17] nor are they objectively severe or persuasive enough to plausibly state a claim for a hostile work environment. *See Littlejohn*, 795 F.3d at 320–21; *Tolbert*, 790 F.3d at 439. Therefore, the Court concludes that Plaintiff fails to state a claim for a hostile work environment under Title VII. *See, e.g.*, *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L SJF AKT, 2014 WL 6473527, at *20 (E.D.N.Y. Nov. 17, 2014) (dismissing an inadequately pleaded hostile work environment claim under Rule 12(b)(6) and collecting cases). This claim, too, is dismissed.

---

[16] *See also* Opp'n at 9 ("National origin was also a motivating factor [for her termination] as [P]laintiff was abused by staff (yelling excessively).").

[17] To the contrary, Ms. McKenzie alleges that at least some of these circumstances were experienced by "all the employees." *See* SAC ¶ 7. In other words, many of these circumstances were not even experienced by Plaintiff herself.

### F.  Supplemental Jurisdiction

Having dismissed all of Ms. McKenzie's federal claims, the Court declines to accept supplemental jurisdiction over any of her state law claims, including any claims brought under the NYSHRL and the NYCHRL.  When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'"  *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. CONST. art. III, § 2)).  Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."  *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).  Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Here, subsection (3) applies because the Court has dismissed all the claims over

which it had original jurisdiction.  Thus, the Court may exercise its discretion to decline

supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court

should not decline to exercise supplemental jurisdiction unless it also determines that doing so

would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity."

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted).  Both the Second

Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state

claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.

1998) (quoting *Gibbs*, 383 U.S. at 726).  "Although this is not a mandatory rule, the Supreme Court

has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-

law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First

Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should

be dismissed as well." (internal quotation marks and citation omitted)).  This is the usual case:  the

Court has evaluated the values set forth in *Gibbs* in the context of this case and concludes that they

support the Court's decision to decline supplemental jurisdiction.

## IV. LEAVE TO AMEND

Defendant's motion to dismiss is granted without leave to amend.  "The court should freely

give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave may be

denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the

opposing party."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."  *Id.*

Ms. McKenzie failed to adequately plead her claims brought under Title VII and the ADA; any attempt to replead those claims would be futile.  Moreover, Ms. McKenzie has twice been granted an opportunity to amend her complaint following a ruling from the Court.  *See* November Opinion; July Opinion.  Ms. McKenzie failed to cure the deficiencies twice laid out by the Court in both its November Opinion and its July Opinion.  The SAC lacks any substantial additional allegations beyond those included in the FAC, which was similarly dismissed under Rule 12(b)(6) for failure to state a claim.  *See* July Opinion.  And Ms. McKenzie has failed to identify how any further amendment would cure the pleading deficiencies identified in those opinions and in this opinion.[18] Accordingly, any attempt to replead the claims asserted in the SAC would be futile.  *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile).  Leave to amend is therefore denied.

---

[18] Although as a pro se litigant, Plaintiff may not fully appreciate the legal salience of this characterization, Plaintiff herself calls her allegations "vague and conclusory."  Opp'n at 3, 12, 13.  The section addressing the leave-to-amend issue in her opposition merely states that "Plaintiff believes that Big Apple Training should be reinvestigated and that although her claims seem to be vague and conclusory, they are factual and the court should consider them."  *Id.* at 13.  And Ms. McKenzie reasserts her argument that, in her words:  "Defendant wanted an instructor who would pass failing students with one exam at the end of the term being unfair and dishonest (religious discrimination) plaintiff was abused by staff members at big apple training (yelling) because of their dislike of American people.  She was indirectly terminated and lied to after she increased defendant[']s clientele."  *Id.*  She continues:  "Plaintiff was indirectly terminated because of students['] complaints and negative comments that were more than likely due to her disability.  Plaintiff was never written up or verbally warned of problematic behavior that would lead to her termination."  *Id.* at 14.  None of this suggests that there are any additional facts—sufficient to cure the deficiencies identified in this opinion, and in the Court's prior two opinions—that Plaintiff may plead if given the opportunity to amend her complaint a third time.  Rather, Ms. McKenzie's opposition merely reiterates the content of the SAC, which itself largely regurgitated the content of the FAC.  Both have now been dismissed for failure to state a claim.

IV.     **CONCLUSION**

For these reasons, the Court concludes that Plaintiff has failed to adequately state a claim for

(1) discrimination on the basis of disability under the ADA; (2) religious discrimination under Title

VII; (3) national origin discrimination under Title VII; (4) sex discrimination under Title VII; and (5)

a hostile work environment under Title VII.  Therefore, the Court grants Defendant's motion to

dismiss the ADA and Title VII claims with prejudice.

However, the Court reminds Plaintiff that a dismissal in federal court for lack of jurisdiction

over the state law claims, specifically, does not necessarily prevent Plaintiff from bringing those state

law claims in state court.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 30, to enter

judgment for Defendant, and to close this case.

SO ORDERED.

Dated:  April 23, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge